**In re Edward D. FURLONG & Linda Mae Furlong, Debtors.**

**Edward D. FURLONG, Plaintiff,**

v.

**STATE OF MISSOURI, DIVISION OF FAMILY SERVICES, Defendant.**

Bankruptcy No. 93–20133–C.
Adv. No. 93–2008–C.

United States Bankruptcy Court,
W.D. Missouri.

June 17, 1993.

Fred Dannov, Columbia, MO, for debtor/plaintiff.

Lana R. Woolsey, Columbia, MO, for defendant.

### *MEMORANDUM OPINION*

FRANK W. KOGER, Chief Judge.

Edward Dean Furlong and Linda Mae Furlong filed their petition·for relief under Chapter 7 on February 24, 1993. The only problem arising from the case is the claim of the State of Missouri, Division of Family Services, against Edward D. Furlong for $9,622.59. It is the contention of the state that said sum represents

> "debt ... to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement ..."

duly assigned to such division of the state. Debtor Edward Dean Furlong contends that said sum does not fulfill the requirements of 11 U.S.C. § 523(a)(5) as quoted above.

For the purposes of this discussion, the debtor/plaintiff will be denominated as "debtor" and the defendant as "Missouri". The background is somewhat more than the usual disagreement over the interpretation of a dissolution agreement and subsequent decree. Some seventeen years ago, it would appear that debtor and a young lady named Virginia were (briefly) more than friends. After what debtor characterized as "more like a party" than a "relationship", debtor and Virginia parted. Debtor allegedly did not hear from Virginia, did not know of her pregnancy and first learned of her whereabouts after the State of Missouri sought money from him as the father of a child he never knew.

Virginia applied to Missouri for public assistance in June of 1989. In May or June of 1992, Missouri filed in Boone County Circuit Court a Petition For Declaration Of Paternity And Order Of Support And Judgment On State Debt. Missouri brought the action in the name of Virginia as next friend of Jessie, Virginia individually, and in its own name. Prior to the filing of that petition, debtor who has denied and still denies paternity, underwent blood testing. The results of said testing indicated a 99.95% probability that debtor was the father.

No order, decree or judgment has been rendered in the Boone County action. Neither Missouri, nor Virginia, nor Jessie has taken any action in this bankruptcy proceeding. Debtor filed this adversary action to have the debt declared dischargeable and Missouri belatedly filed a response and appeared at the trial.

It is Missouri's contention that the relationship between Virginia and debtor produced a child named Jessie; that Virginia has received $9,622.59 from Aid To Families With Dependent Children; that Virginia has assigned her claim to said funds to Missouri; that Missouri's claim to $9,622.59 is nondischargeable. It is debtor's contention that Missouri's claim does not fulfill the requirements of 11 U.S.C. § 523(a)(5) because there is no: "separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement ..."

The Court believes that debtor's position, while frankly not palatable, must prevail. Before debtor's obligation to pay alimony or maintenance arises, there must be a decree to pay. Child support, on the other hand, may not always require a decree as such, but a party cannot be responsible for child support unless the child is acknowledged, or the child is the product of a legal marriage, or there has been a determination of paternity. In this instance, none of these conditions precedent have been met. *In re Bruner*, 43 B.R. 143 (Bkrtcy.E.D.Mo. 1984). As Judge McDonald opined in a foregoing exhaustive and well reasoned opinion: "to be nondischargeable, any debt for child support owed by the debtor must be incurred or arise from a separation agreement, divorce decree, or property agreement".

This Court hastens to acknowledge that Judge Mcdonald's decision was based on the 1979 Code prior to the 1984 and 1986 amendments, but the 1984 amendments only added the words:

"or other order of a court of record",

between the phrases "divorce decree" and "or property agreement". Likewise, the 1986 amendment only added the words:

"determination made in accordance with state or territorial law by a governmental unit",

in the same sequence of connected clauses. There is no question but what Congress intended—first with the 1984 amendments and then with the 1986 amendments—to plug the loophole that allowed fathers of children born out of wedlock to escape child support obligations in bankruptcy. See the comments of Mr. Exon at 124 Cong.Rec. H11113, H11114 (Sept. 28, 1978) and at 132 Cong.Rec. H8998 (Oct. 2 1986). However, as is clear from those remarks as well as those of Mr. Hyde and Mr. Denton at 132 Cong.Rec. 9002 (Oct. 2, 1986) and at 132 Cong.Rec. S15091 (Oct. 3, 1986) respectively the added phrases were designed to cover court ordered child support payments after paternity suits in the 1984 amendment and administratively ordered child support payments by the 16 states that determine paternity and child support payments for out of wedlock children by administrative agency rather than court action in the 1986 amendment.

Unfortunately, for Missouri and for all illegitimate children, the Congressional amendments do not completely accomplish their desired result. Putative fathers who have been the subject of neither a completed state court paternity action, nor a completed state administrative agency paternity action (in the 16 states allowing same), are still potentially able to escape the consequences of their conduct.

Obviously, there is a method whereby Missouri could have avoided this result.

Had it sought: (1) relief from the stay to pursue the paternity action in Boone County, and (2) an extension of time to file an adversary action under 11 U.S.C. § 523(a)(5), it is highly likely that a different result might have been reached. No bankruptcy judge (including this one) approves of a debtor escaping child support payments. That disapproval is ameliorated only slightly by the fact that the minor child has been supported by Missouri and it is recovery by the state of the support paid by the state that is at stake here.

Missouri has cited *In re McCord*, 151 B.R. 915 (Bkrtcy.E.D.Mo.1993) in support of its position. This Court agrees with *McCord*, but must point out that an order of the Circuit Court of St. Francois County, Missouri, preceded the bankruptcy petition by some 50 days. It was that state court judgment of paternity and assessment of child support arrearages that Judge James J. Barta held nondischargeable in a detailed and well reasoned opinion. Either Congress needs to make at least one more change in 11 U.S.C. § 523(a)(5) or the enforcement officials of the Sovereign State of Missouri need to be more alert to the nuances of bankruptcy practice.

The complaint of debtor to declare the debt to the State of Missouri, Division of Family Services in the amount of $9,622.59 dischargeable is GRANTED. However, any sums paid by Missouri after February 24, 1993, are not discharged and Missouri may pursue any available remedies for same in state court as soon as this case is closed and the automatic stay merges into the permanent injunction against collection of prepetition and duly listed debts.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.