In re John Richard KEMP, Jr., Debtor.

Melinda Williams, Plaintiff,

v.

John Richard Kemp, Jr., Defendant.

Bankruptcy No. 98–21412.
Adversary No. 99–2006.

United States Bankruptcy Court,
W.D. Missouri.

May 25, 1999.

Janice A. Harder, Columbia, MO, for plaintiff.

Harry D. Boul, Columbia, MO, for debtor/defendant.

George T. Johnson, Memphis, TN, Chapter 7 Trustee.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the complaint filed by the plaintiff, Melinda Williams, to determine dischargeability of debt under 11 U.S.C. § 523(a)(5). For the following reasons, the Court will grant the relief requested by Melinda Williams in part.

### Facts

On June 28, 1998, the Circuit Court of Boone County, Missouri entered a Judgment in a paternity action (the "Judgment") in which it determined that the debtor/defendant, John Richard Kemp, Jr., is the natural father of Matthew Ryan Williams, who was born to Melinda Williams on October 14, 1997. Kemp and Williams have never been married. In the Judgment the state court also: awarded legal custody of Matthew to Williams; awarded primary physical custody of Matthew to Williams; awarded Kemp reasonable visitation; found that the prenatal and birth expenses for Matthew were $4315.53

and that the medical expenses and necessaries for Matthew since his birth were $5327.57 for a total of $9643.10; entered judgment in favor of Williams and against Kemp in the sum of $4821.55 for one-half of the birth expenses and cost of necessaries; after considering the monthly income of each party, ordered Kemp to pay child support in the amount of $396.00 per month beginning July 2, 1998; ordered Williams to maintain health insurance for Matthew and to pay any deductibles or copayments; ordered each party to pay his or her own attorney's fees; and ordered Kemp to pay the costs of the paternity action. The state court did not award interest to Williams on the $4821.55 award for birth expenses and cost of necessaries. Kemp has never paid anything to Williams on the $4821.55 award.

Melinda Williams' parents, Michael and Deborah Williams, attempted to intervene in the paternity action contending that they had incurred costs for the birth and prenatal care of Matthew, and that since his birth they had incurred costs and expended sums in caring for and maintaining Matthew. The Intervenor's [sic] Petition For Necessaries did not set forth the amount expended by Williams' parents for the birth expenses and cost of necessaries. The state court denied the petition to intervene.

On November 2, 1998, Kemp filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In his Schedule F, Kemp listed an unsecured, nonpriority debt to Melinda Williams in the amount of $4400.00, which he stated was for medical bills incurred in October of 1997. On January 25, 1999, Williams filed the Complaint to Determine Dischargeability of Debt presently before the Court. In her complaint, Williams requests that the $4821.55 award in her favor against Kemp for one-half of the birth expenses and cost of necessaries be declared nondischargeable under 11 U.S.C. § 523(a)(5) as being in the nature of support; requests that the Court award interest on the nondischargeable

sum of $4821.55 at the State of Missouri legal rate of 9% from and after June 28, 1998; and requests an award of the attorney's fees and costs incurred by her in this nondischargeability action.

The trial in this matter was held on April 15, 1999. Kemp conceded in his answer that he was ordered to pay the sum of $4821.55 to Williams pursuant to the Judgment entered in the paternity action and that this amount is one-half of the total birth expenses and cost of necessaries for his son Matthew. Williams testified that she is a full-time student at Central Missouri State University in Warrensburg, Missouri, and that she works part-time for her parents. Williams stated that she did not have the money to pay the hospital for Matthew's birth expenses so her parents paid the hospital bill and also paid for the cost of Matthew's necessaries after his birth. Williams testified that she has no written or verbal contract to repay her parents and that her parents did not require her to agree to pay them back at the time they paid the birth expenses and cost of necessaries. Williams stated that she wanted her parents to pay the bills so that her credit would not be impaired, that the money was a gift at the time her parents paid the bills, that she would like to pay back her parents, that she believes she must repay her parents for Kemp's share of the bills paid by them and that she intends to repay her parents. Williams acknowledged that she is under no legal obligation to reimburse her parents.

Melinda Williams' father, Michael Williams, testified that he paid all of the hospital bill for Matthew's birthing expense because Melinda did not have the money and no money was forthcoming from Kemp to pay his share of the bill. Michael Williams stated that he paid the bill to protect Melinda's credit rating, that he considers the paid bills to be a loan to his daughter and even though there are no written documents he expects Melinda to pay him back.

Kemp did not testify at the trial. The Court's review of the bankruptcy file in this case shows that Kemp is gainfully employed as a salesman earning a gross monthly salary of $1665.00.

At the conclusion of trial, Melinda Williams presented as evidence an attorney's fee statement. Melinda requests an award in her favor for the attorney's fees in the amount of $920.00 and costs of $150.00 that she has incurred in the prosecution of this nondischargeability action.

The Court granted the parties additional time to brief the issues raised at trial and took the matter under advisement. The last brief was filed on May 5, 1999. The Court has read the briefs, has considered the arguments of counsel, has conducted its own independent research and is now ready to rule.

### Discussion

Section 523(a)(5) of the Bankruptcy Code states that:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*　　\*　　\*　　\*　　\*　　\*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in

the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

 "It is well established that debts in the nature of alimony, maintenance or support are nondischargeable under section 523(a)(5)." *In re Staggs*, 203 B.R. 712, 717 (Bankr.W.D.Mo.1996) (citing *In re Kline*, 65 F.3d 749 (8th Cir.1995)). " 'Whether a particular debt is a support obligation ... is a question of federal bankruptcy law, not state law.' " *Staggs*, 203 B.R. at 717 (quoting *In re Williams*, 703 F.2d 1055, 1056 (8th Cir.1983)). Melinda Williams has the burden to prove nondischargeability by a preponderance of the evidence. *See Staggs*, 203 B.R. at 717.

In *Kline*, in the context of ruling that an award of attorney's fees in the nature of maintenance or support for a former spouse or child of the debtor can be nondischargeable under section 523(a)(5) even though the fees are to be paid directly to the attorney for the non-debtor party, the Eighth Circuit opined that exceptions to discharge for alimony, maintenance and support deserve a liberal construction even though the statutory exceptions to discharge are usually construed narrowly. *Kline*, 65 F.3d at 750–51. The Eighth Circuit stated: " 'The policy underlying section 523(a)(5) ... favors enforcement of familial support obligations over a "fresh start" for the debtor.' " *Id.* (quoting *In re Miller*, 55 F.3d 1487, 1489 (10th Cir.1995)).

Kemp contends that the $4821.55 debt should be discharged for two reasons. First, Kemp argues that no debt exists because all of the birthing expenses and costs of necessaries were paid by Melinda Williams' parents as a gift to Melinda and she has no legal obligation to repay them. Next, Kemp argues that if there is a debt, it does not fall within the purview of section 523(a)(5) because the debt is not owed to his spouse, former spouse or child, but instead is owed to Melinda Williams' parents. Kemp further argues that if the debt is considered owed to Melinda Williams because of the state court Judg-ment running in her favor, she is not a spouse or former spouse as required by the statute. Kemp asserts that "[C]ongress did not grant the privilege of nondischargeability [under section 523(a)(5)] to unwed mothers."

The Court will first address whether the $4821.55 award in favor of Melinda Williams for one-half of the birthing expenses and cost of necessaries is nondischargeable under section 523(a)(5). The Court will next turn its attention to Melinda Williams' request for interest on the debt retroactive to the date of the state court Judgment, and request for an award of attorney's fees and costs for prosecution of this adversary proceeding.

1. *Whether the debt for birthing expenses and cost of necessaries is nondischargeable*

 In this case, the state court entered a Judgment in favor of Melinda Williams in which it ordered Kemp to pay to Melinda Williams $4821.55 for one-half of the birthing expenses and cost of necessaries for the parties' son Matthew. This pre-bankruptcy judgment is res judicata on the issue of Kemp's liability to Melinda Williams. *See In re Tague*, 137 B.R. 495, 503 (Bankr.D.Colo.1991) (state court judgment "establishes the defendant's liability to the plaintiff"); *In re Hunter*, 52 B.R. 912, 915 (D.N.D.1984), *aff'd in part and remanded in part on other grounds*, 771 F.2d 1126 (8th Cir.1985) (same). "[R]es judicata or claim preclusion bars the relitigation of issues which were actually litigated or which could have been litigated in the first suit." *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983). "As a general rule, a judgment duly rendered in one court will be recognized in another suit between the parties as res judicata, thus precluding the parties from relitigating a matter that has already been decided." *In re Watson*, 117 B.R. 291, 292 (Bankr. W.D.Mo.1990). *See also In re Holiday Interval, Inc.*, 114 B.R. 177, 179 (Bankr. W.D.Mo.1989) ("The practice of one court

affording preclusive effect to valid judgments of another court is historically well established.... [F]ederal courts must afford state court judgments full faith and credit.").

■ Here, Kemp had full opportunity to argue before the state court that because Melinda Williams' parents had paid the birthing expenses and costs of necessaries it would not be appropriate to grant judgment in favor of her for one-half of those expenses and costs. For whatever reason, whether Kemp failed to make such an argument or, if made, the state court rejected the argument, the state court did grant judgment in favor of Melinda Williams and against Kemp in the amount of $4821.55. The Judgment is valid and firmly establishes Kemp's liability to Melinda Williams for one-half of the birthing expenses and cost of necessaries in the amount of $4821.55. This Court cannot ignore the state court's Judgment. To do so would not only violate the principles of res judicata, but quite possibly the Rooker–Feldman doctrine, which precludes a federal court from engaging in impermissible appellate review of state court decisions. *See In re Goetzman,* 91 F.3d 1173 (8th Cir.1996), *cert. denied,* 519 U.S. 1042, 117 S.Ct. 612, 136 L.Ed.2d 537 (1996); *In re Ferren,* 227 B.R. 279 (8th Cir. BAP 1998); *In re Hatcher,* 218 B.R. 441 (8th Cir. BAP 1998), *aff'd,* 175 F.3d 1024, 1999 WL 147048 (8th Cir.1999).

■ The Court determines that pursuant to the valid state court Judgment, Kemp owes a debt to Melinda Williams in the amount of $4821.55. The Court, however, is not prohibited by res judicata from inquiring into the nature of the debt in order to determine whether this debt is nondischargeable under section 523(a)(5). *See Lovell v. Mixon,* 719 F.2d at 1377; *Watson,* 117 B.R. at 293; *Hunter,* 52 B.R. at 915.

■ "Missouri law recognizes that the father of minor children has a common law duty and obligation to support his children." *In re McCord,* 151 B.R. 915, 917 (Bankr.E.D.Mo.1993) (citing *State ex rel. Division of Family Services v. Standridge,* 676 S.W.2d 513, 515 (Mo. banc 1984)). Pursuant to Missouri law "the duty to support the child is one Father owes to [the child], not to Mother .... [and][t]he child's right to support is not in any way impaired by illegitimacy." *Buxton v. Kaneer,* 904 S.W.2d 77, 80 (Mo.App.1995). *See also Payne by Payne v. Delp,* 821 S.W.2d 582, 584 (Mo.App.1992) ("A child's right to support from the father is not impaired by the child's illegitimacy.").

Several federal courts which have considered the issue have held that a state court judgment ordering the debtor/father to pay the birthing expenses for a child born out of wedlock and/or the cost of necessaries for that child is a debt owed to the child for the child's support and is nondischargeable in bankruptcy. *See, e.g., In re Seibert,* 914 F.2d 102 (7th Cir.1990); *In re Kimbrell,* 201 B.R. 521 (Bankr. E.D.Ark.1996); *In re McCord,* 151 B.R. 915 (Bankr.E.D.Mo.1993); *In re Valls,* 79 B.R. 270 (Bankr.W.D.La.1987); *In re Pierson,* 47 B.R. 258 (Bankr.D.Neb.1985).

In *Seibert,* pursuant to a paternity action the state court ordered the debtor/father to pay medical expenses associated with the birth of his illegitimate child in the amount of $2749.96 and the court costs of the paternity action. Thereafter, the debtor filed a Chapter 7 bankruptcy case and instituted an adversary proceeding seeking a declaration that the foregoing debt was dischargeable in his bankruptcy under section 523(a)(5). The bankruptcy court determined that the debt was dischargeable because it was owed to the mother of the child and not to a child, a spouse or a former spouse, and because it was not in the nature of support. The district court affirmed. The Seventh Circuit reversed ruling that the debt was nondischargeable under section 523(a)(5). The Seventh Circuit opined:

> At issue is whether expenses of "pregnancy and confinement" are a debt owed

to a child for the child's support. As a general matter, medical expenses are in the nature of support [citations omitted], however, what is important is to whom is the debt owed, that is, for whose support are pregnancy and confinement expenses incurred—the mother's or the child's or both.

\* \* \* \* \* \*

Congress has made it clear that questions of dischargeability and the interpretation of the bankruptcy code are to be determined under the federal bankruptcy laws, not state law. [Citations omitted .] ... By determining dischargeability with reference to federal bankruptcy law, we ensure uniformity of treatment of debtors who are similarly situated.

Several considerations persuade us that the better view is that the pregnancy and confinement expenses are part of the paternity obligation owed to the child. First, but for the pregnancy, Deanne would not have incurred medical and confinement expenses associated with baby Derek's birth. These medical services, although performed upon the mother, necessarily and directly benefit the child as well.

\* \* \* \* \* \*

"[T]he policy of giving the debtor a fresh start should not be interpreted to place an unmarried father in a better position with respect to dischargeability than a married father." *Valls,* 79 B.R. at 271. A father should not be allowed to avoid liability for the mother's medical care arising from the birth of their child merely because the parents did not marry until after their child was born or did not marry at all.... [W]e hold that pregnancy and confinement expenses constitute a debt in the nature of support to the child.

We also conclude that the obligation was incurred "in connection with ... [an] order of a court of record." 11 U.S.C. § 523(a)(5). Wade's obligation was incurred in connection with the state court paternity judgment. The statutory requirement is straightforward, and we conclude that it is satisfied in this case. The 1984 amendment to § 523(a)(5), which added the ... language "in connection with a separation agreement, divorce decree, or other order of a court of record," was intended to address the problem of support for children born outside of marriage. The purpose of this amendment was to make the security of support depend on parentage, rather than the marital status of the biological parents. [Citation omitted.] Because we find that Wade's obligation to pay the pregnancy and confinement expenses are in the nature of support to the child and were incurred in connection with a paternity judgment, we hold that the debt is nondischargeable.

*Seibert,* 914 F.2d at 105–07.

In *Kimbrell,* the Honorable Mary D. Scott determined that a debt owed to the plaintiff/mother arising from a state court judgment in a paternity action in the amount of $6480.39 for the " 'lying-in' " expenses related to the birth of the debtor/father's illegitimate child was nondischargeable under section 523(a)(5) as being in the nature of support of the child. *Kimbrell,* 201 B.R. at 522. In so ruling, Judge Scott noted "that all of the cases addressing the issue of whether birth and paternity expenses are in the nature of support have answered that question in the affirmative. For the reasons stated in those cases, this Court also determines the paternity testing, birthing expenses, and court costs associated with the award of such expenses are in the nature of support." *Id.*

Likewise, in *McCord* the Honorable James J. Barta determined, in relevant part, that a judgment in favor of the plaintiff/mother rendered in a state court paternity action in the amount of $13,470.00 for necessaries furnished by the mother for the parties' illegitimate child was nondis-

chargeable in the debtor/father's bankruptcy under section 523(a)(5) as being in the nature of a support obligation. *McCord,* 151 B.R. at 917–18. Judge Barta opined:

> The Bankruptcy Code recognizes that support obligations of parents to their children born out of wedlock are subject to exception from discharge, just as such obligations to children born in wedlock may be excepted from discharge.
>
> > Section 523(a)(5), as amended July 1984, makes clear that support obligations imposed by a court of record in a paternity action are nondischargeable on the same basis as those awarded in connection with a divorce or dissolution proceeding.
> >
> > *In re Barbre (Smith v. Barbre),* 91 B.R. 846, 847 (Bankr.S.D.Ill.1988).

> \* \* \* \* \* \*

The Debtors have argued that the award by the state court to Coleman for $13,470.00 was designated by the state court as an award for reimbursement of necessaries and not as child support. The state court found that "Coleman is entitled to an award of back child support for necessaries furnished the child." (Judgment order of June 6, 1991, p. 2). Whether this obligation is for support and therefore non-dischargeable is a question of federal bankruptcy law, not state law. In making the awards in this case, the state court considered the financial abilities of the parties. In setting the amount of child support to be paid by McCord in the future, the state court considered the earning capacities of both parties, McCord's other child support obligation, Coleman's day care cost, the age of the child, and McCord's assumption of the child birth expenses. (Judgment order of June 6, 1991, p. 3–4). There is nothing in the record to suggest that there was an unequal assessment of support obligations in the state court action. The record indicates and the Court finds and concludes that this award was in the nature of child support. Therefore, the Court concludes further that the award of $13,-470.00 to Coleman was intended to be and therefore, is for the support of Joseph McCord's child and is non-dischargeable in this bankruptcy case.

*McCord,* 151 B.R. at 917–18.

In *Valls* the bankruptcy court determined that a state court judgment in a paternity action in favor of the plaintiff/mother for $1573.15 for one-half of the costs of pregnancy, delivery, prenatal care and post-natal care of the parties' illegitimate child along with a judgment in the amount of $885.00 for the cost of blood tests to determine paternity were nondischargeable in the debtor/father's bankruptcy under section 523(a)(5) as being in the nature of support. *Valls,* 79 B.R. at 271. The bankruptcy court advised that section 523(a)(5) "is not to be given a narrow reading in paternity or similar situations," and opined that "[t]he policy of giving the debtor a fresh start should not be interpreted to place an unmarried father in a better position with respect to dischargeability than a married father." *Id.*

In *In re Furlong,* 155 B.R. 517, 518 (Bankr.W.D.Mo.1993), this Court acknowledged that the 1984 and 1986 amendments to section 523(a)(5) of the Bankruptcy Code were designed "to plug the loophole that allowed fathers of children born out of wedlock to escape child support obligations in bankruptcy." This Court opined that the amendments "were designed to cover court ordered child support payments after paternity suits ... and administratively ordered child support payments by the 16 states that determine paternity and child support payments for out of wedlock children by administrative agency rather than court action." *Id.* However, in *Furlong* the putative debtor/father had never been the subject of a completed state court paternity action and he was able to escape responsibility for fathering a child out of wedlock. Under section 523(a)(5), even

read broadly, in the absence of a court order, decree or judgment rendered in the paternity action this Court had no choice but to declare that the debt the putative debtor/father owed to the State of Missouri for public assistance provided prepetition to the mother of the child born out of wedlock was dischargeable in bankruptcy.

■ In this case, though, a state court Judgment exists that established Kemp is the father of Matthew and, among other things, ordered Kemp to pay to Melinda Williams one-half of the expenses associated with Matthew's birth and one-half of the cost of necessaries provided to Matthew after his birth. When the state court set the amount of child support to be paid by Kemp, it took into consideration Kemp's monthly gross income from his employment; imputed monthly minimum wage income to Melinda Williams; and considered the monthly child care expenses and cost of Matthew's health insurance incurred by Williams. Kemp is gainfully employed as a salesman earning a gross monthly salary of $1665.00, which the Court observes exceeds the monthly gross income figure set forth in the state court Judgment. Melinda Williams is a full-time college student who does work part-time for her parents. After ordering Kemp to pay child support in the amount of $396.00 per month, the state court ordered Melinda Williams to maintain health insurance for Matthew and to pay any deductibles or co-payments. The state court also ordered each party to pay his or her own attorney's fees. It is clear to this Court that the state court considered the financial circumstances of the parties when making the various awards in the Judgment, including the award in favor of Melinda Williams for one-half of the birth expenses and cost of necessaries. Based upon the persuasive reasoning of the foregoing authorities and the state court's consideration of the financial situations of the parties when entering the Judgment, the Court finds that the award in favor of Melinda Williams for one-half of the birth

expenses and cost of necessaries is in the nature of support for Matthew, and determines that the debt in the amount of $4821.55 is nondischargeable in Kemp's bankruptcy.

The Court notes that although pursuant to principles of res judicata the issue of Kemp's liability to Melinda Williams for this debt has been established by the valid state court Judgment, the Court's decision declaring the debt to be nondischargeable would be the same in the absence of the application of res judicata despite the fact that the birthing expenses and cost of necessaries have been paid by Williams' parents. In *In re Smith,* 139 B.R. 864 (Bankr.N.D.Ohio 1992), the minor child was born out of wedlock in 1971. Sixteen years later, the mother brought a paternity action in which the debtor was declared to be the father of the child and the state court ordered him to pay retroactive child support in the amount of $15.00 per week from the child's birth until July of 1989, in the total amount of $13,185.00. The debtor/father argued that the retroactive child support debt was dischargeable in his bankruptcy because due to the mother's failure to commence a timely paternity action, he was not even obligated to provide support payments prior to the entry of the state court judgment in November of 1988. As part of her argument in support of nondischargeability, the mother explained to the bankruptcy court that in order to raise the parties' child she was required to borrow thousands of dollars from her parents, and that although the retroactive support obligation would not be used to provide current support for the child, the monies would nevertheless be used to provide the child with actual and necessary support. The bankruptcy court determined that the retroactive support obligation was a nondischargeable debt under section 523(a)(5), and in so ruling opined:

Shumaker bore the sole financial burden of raising Baker. She fed, clothed, and provided shelter for Baker. Over the

course of sixteen (16) years, such needs far exceeded the amount of the retroactive support obligation. As a result of providing for her child, Shumaker had to borrow large sums of money from her parents. This Court believes that the support obligation ordered by the Court of Common Pleas has the actual effect of providing necessary child support. The award would allow Shumaker to repay the generosity of her parents. To hold otherwise would preclude a parent from collecting retroactive support once Bankruptcy proceedings have commenced. This Court does not believe that such a preclusion is within the spirit of Bankruptcy [n]or was contemplated by the drafters of the Bankruptcy Code. *Smith*, 139 B.R. at 867.

■ Here, under Missouri law Kemp has a duty to provide support for his son. Kemp failed to pay for one-half of the birthing expenses at the time the expenses were incurred by Melinda Williams upon Matthew's birth, and again failed to pay for one-half of the cost of providing necessaries to Matthew at the time those expenses were incurred after his birth. Melinda Williams was unable to bear the cost of the birthing expenses and necessaries and her parents stepped in to help her out of a financial jam, caused in part by Kemp's failure to pay his one-half share. This Court will not allow Kemp to avoid the responsibility clearly imposed by Missouri law, nor penalize Williams for accepting financial assistance from her parents. If, for some reason, res judicata does not apply to the state court Judgment, this Court rules that the Judgment debt in the amount of $4821.55 in favor of Melinda Williams is nondischargeable even though Williams' parents' paid the bills in question. · The state court award in favor of Williams will allow her to repay her parents for Kemp's one-half share of the birthing expenses and cost of necessaries. Further, even if Williams' parents do not press her for payment, there is no doubt in this Court's mind that any monies Kemp

pays pursuant to the state court ordered award will be used by Williams for Matthew's support and thereby will directly benefit Matthew. The Court firmly believes that the drafters of section 523(a)(5) and its subsequent amendments along with the Eighth Circuit Court of Appeals would expect no less than such a ruling by this Court, and that under section 523(a)(5) foremost consideration must be given to ensuring that Kemp meet his duty to support the child born to the parties of this action.

2. *Request for interest on the debt retroactive to the date of the state court Judgment*

As part of her nondischargeability complaint, Williams requests that the Court award interest on the nondischargeable sum of $4821.55 at the State of Missouri legal rate of 9% from and after June 28, 1998, which was the date of the state court Judgment in the paternity action.

■ It is well accepted that interest which attaches to the underlying nondischargeable debt is also nondischargeable and is collectible from the debtor. *See, e.g., In re Hunter*, 771 F.2d 1126, 1131–32 (8th Cir.1985); *In re Branch*, 175 B.R. 732, 734 (Bankr.D.Neb.1994); *In re Carroll*, 16 B.R. 494 (Bankr.D.Minn.1982). However, in this case the state court did not impose interest on the $4821.55 award in the Judgment. Williams is asking this Court, in effect, to modify the state court Judgment by ordering interest on the debt retroactive to the date on which the Judgment was entered, which this Court certainly cannot do based upon several principles of law including res judicata and the Rooker–Feldman doctrine. *See Lovell v. Mixon*, 719 F.2d at 1376; *Goetzman*, 91 F.3d at 1177. *See also Staggs*, 203 B.R. at 722 (In response to the debtor's attempt to collaterally attack the state court judgment, this Court opined that it could "not modify the state court's prior award" of guardian ad litem fees to decrease the

amount of the award based upon the debtor's changed financial circumstances.).

In addition, it appears that the state court committed no error by failing to award interest on the debt. The legal rate of interest on judgments in Missouri is established by Mo.Rev.Stat. § 408.040.1 (1990), which states that:

> Interest shall be allowed on all money due upon any judgment or order of any court from the day of rendering the same until satisfaction be made by payment, accord or sale of property; all such judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear nine percent per annum until satisfaction made as aforesaid.

Although the imposition of interest on a judgment debt appears to be mandatory under section 408.040.1 of the Missouri statutes, there are exceptions. The exception relevant in this case may be found in *R.E.M. v. R.C.M.*, 804 S.W.2d 813 (Mo. App.1991), in which the mother appealed the trial court's refusal to grant either prejudgment or post-judgment interest on the judgment rendered against the father in a paternity action for his share of past expenses incurred by the mother in raising the parties' illegitimate child. The Missouri Court of Appeals affirmed rejecting the mother's argument that she was entitled to post-judgment interest under Mo. Rev.Stat. § 408.040.1. The court opined that pursuant to section 210.841.5 of the Missouri Uniform Parentage Act the trial court was required to consider not only the needs of the child, but also the financial means and earning ability of the parents, and that "[b]y authority of [the Uniform Parentage Act], the trial court could order the [judgment] be paid without interest because that was the proportion of the expenses already incurred that the court deemed just." *R.E.M.*, 804 S.W.2d at 814.

Here, as discussed above, the state court considered the financial circumstances of both Kemp and Williams when rendering the Judgment. The state court chose not to grant post-judgment interest on the $4821.55 award. Under the authority of the Missouri Uniform Parentage Act and the Missouri Court of Appeals decision in *R.E.M. v. R.C.M.* the state court was well within its right to decide that an award of post-judgment interest on this debt would not be appropriate.

■ This Court realizes that reviewing the state court's ruling for purposes of deciding whether it is right or wrong is impermissible under the Rooker–Feldman doctrine. The Court would like to clarify that it has engaged in the foregoing analysis of the state court's failure to award interest on the judgment debt only in an attempt to obtain guidance regarding whether this Court should grant interest on the debt at the Missouri statutory rate from the date that this nondischargeability order is entered. Based upon the state court's decision to not award interest, and a review of the Missouri Court of Appeals opinion in *R.E.M. v. R.C.M.*, the Court determines that an award of interest would not be appropriate and will not award any interest on the nondischargeable debt.

### 3. *Request for attorney's fees and costs incurred to prosecute this action*

Melinda Williams requests that the Court award her the total sum of $1070.00 for the attorney's fees and costs that she has incurred in the prosecution of this nondischargeability action.

■ After reviewing several court decisions addressing this issue, the Court observes that an award of attorney's fees to a successful plaintiff in a nondischargeability action is the exception rather than the rule. *See, e. g., In re Alport*, 144 F.3d 1163 (8th Cir.1998); *Hunter*, 771 F.2d at 1131; *In re Snyder*, 198 B.R. 9 (Bankr. N.D.N.Y.1996); *In re Beattie*, 150 B.R. 699 (Bankr.S.D.Ill.1993); *In re Kellar*, 125 B.R. 716 (Bankr.N.D.N.Y.1989); *In re Barbre*, 91 B.R. 846 (Bankr.S.D.Ill.1988);

*In re Myers,* 61 B.R. 891 (Bankr.N.D.Ga. 1986). The award usually is based upon either a statute that provides for an award of attorney's fees to a prevailing plaintiff, such as 11 U.S.C. § 523(d), which provides that the bankruptcy court may award reasonable attorney's fees and costs to the successful consumer debtor in section 523(a)(2) litigation if the bankruptcy court finds that the creditor's position was not substantially justified, *see Myers,* 61 B.R. at 895–96 (bankruptcy court opined that section 523(d) is the only subsection of section 523 for which attorney's fees are statutorily provided); or is based upon a valid and enforceable contractual right to an award of attorney's fees, *see Alport,* 144 F.3d at 1168; *Hunter,* 771 F.2d at 1131. *See also Kellar,* 125 B.R. at 719 ("Under the longstanding American Rule, attorney's fees are not ordinarily recoverable to the prevailing party absent a basis in statute or enforceable contract."). Additionally, last year the United States Supreme Court in *Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), held that section 523(a)(2)(A) prevents the discharge of all liability arising from fraud, including an award of punitive damages assessed on account of the fraud plus attorney's fees and costs, and other relief that may exceed the value obtained by the debtor. Excluding the foregoing exceptions, "[a]ttorney's fees incurred in the bankruptcy proceeding are post-petition debts and not properly a matter for consideration in a dischargeability action." *Barbre,* 91 B.R. at 849. *But see In re Galpin,* 66 B.R. 127 (N.D.Ga.1985) ("It is within the bankruptcy court's discretion to award attorney's fees for an attorney who establishes the nondischargeability of a debt under § 523.").

In *Beattie* the debtor's former spouse successfully contended that the debtor's obligation for a child's medical expenses was nondischargeable support under section 523(a)(5) and argued that as a prevailing party she was entitled to an award of the attorney's fees incurred by her in the prosecution of the adversary proceeding.

The bankruptcy court rejected her assertion stating that "absent authorization in the Bankruptcy Code, it may not impose attorney fees in a dischargeability proceeding." *Beattie,* 150 B.R. at 704. The court suggested that "a party might seek recovery of such fees in the state court as fees incurred in the enforcement of a support order." *Id. See also Myers,* 61 B.R. at 896 ("If, because of the costs arising out of this litigation, Defendant needs more support than what has already been awarded by the state court and found to be nondischargeable by this Court, she may always seek a modification in state court.").

■ Here, Melinda Williams has no statutory or contractual basis for an award of attorney's fees. Further, there has been *no showing of aggravated conduct* such as willful disobedience of a court order, bad faith or vexatious, wanton or oppressive behavior that would require an award of attorney's fees in Williams' favor. *See Kellar,* 125 B.R. at 719. The Court will not award Williams the attorney's fees that she has incurred in the prosecution of this nondischargeability proceeding.

■ Federal Rule of Bankruptcy Procedure 7054 provides that Fed.R.Civ.P. 54(a)–(c) is applicable in adversary proceedings. Rule 54(a) states in relevant part that: "The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." An award of costs is discretionary with the bankruptcy court. *See In re Hunter,* 52 B.R. 912, 916 (D.N.D. 1984), *aff'd in part and remanded in part on other grounds,* 771 F.2d 1126 (8th Cir. 1985).

Here, the Court determines that each party should be responsible for his or her own costs in this adversary proceeding. The Court will deny Williams' request for an award of the attorney's fees and costs incurred by her to prosecute this nondischargeability action.

*Conclusion*

Based on the above discussion, the Court GRANTS IN PART and DENIES IN PART the relief requested by Melinda Williams in her complaint to determine dischargeability of debt. The Court GRANTS the request that the debt in the amount of $4821.55 be declared nondischargeable under 11 U.S.C. § 523(a)(5). The $4821.55 debt is NONDISCHARGEABLE in John Richard Kemp, Jr.'s, bankruptcy. The Court DENIES Melinda Williams' request for interest on the nondischargeable debt and DENIES her request for an award of attorney's fees and costs.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed. R.Bankr.P. 7052.

So ORDERED.