FILED

AUG 26 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-14-1316-KiTaPa |
| DAVID W. CANTARELLA, | Bk. No.   8:12-23516-CB |
| Debtor. | Adv. No.   8:13-01082-CB |
| DAVID W. CANTARELLA, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| RUTH HERRERA, | |
| Appellee. | |

Submitted Without Oral Argument
on March 19, 2015

Filed - August 26, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:   Appellant David W. Cantarella pro se on brief;
Karen J. Geiss on brief for appellee Ruth Herrera.

Before: KIRSCHER, PAPPAS and TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appellant, chapter 7 debtor David W. Cantarella, appeals a § 523(a)(15) nondischargeability judgment involving debts owed by Cantarella to appellee Ruth G. Herrera.[2]  We REVERSE.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Herrera declared in a Declaration filed with the bankruptcy court that she shared a relationship with Cantarella, became pregnant and gave birth to a baby boy in May of 2006.  On July 11, 2006, Cantarella filed an action against Herrera in the Family Law Division of the Superior Court of the State of California for the County of Orange ("Family Law Division").  On October 1, 2008, Herrera filed in the Family Law Division a stipulation for judgment which included, among other things, a detailed visitation schedule for the parties' child.  The parties further stipulated: (1) to an invalid marriage in Mexico, which is null and void in California; (2) to Cantarella's paternity of the child; (3) to the nonexistence of any community or quasi-community debts; (4) to the payment of certain child birth expenses; and (5) to the resolution of all issues involving property.  The Family Law Division's

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[3] The parties failed to include in the record on appeal many of the relevant documents; we have exercised our discretion to reach the merits of the appeal by independently reviewing the bankruptcy court's electronic docket and the imaged documents attached thereto.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).  The parties also failed to include in the record the Family Law Division documents that may be pertinent: the Petition-Dissolution; and the stipulation for judgment and judgment.

docket submitted in the record reflects the approval of the stipulation of judgment.

Thereafter, the Family Law Division entered an Order on July 28, 2008, denying Herrera's request to declare Cantarella a vexatious litigant, but ordering Cantarella to pay Herrera a sanction of $4,000 and further providing that if Cantarella missed two payments, the entire balance would become due, together with interest at the legal rate of 10% per annum.

Subsequently, the Family Law Division entered a minute order on December 28, 2009, requiring Cantarella and Herrera to pay their own child care costs and to share equally all uninsured medical expenses. This minute order also established that Herrera owed a monthly child support obligation to Cantarella of $371 based on the dissomaster figures stated in the record. The Family Law Division entered another minute order on March 26, 2010, awarding sanctions payable by Cantarella to Herrera in the amount of $700 and providing the acceleration of the entire amount together with interest at the legal rate from the date of default if any payment occurred beyond ten days of the due date.

According to another minute entry dated July 23, 2010, the Family Law Division found Cantarella to be a vexatious litigant and awarded Herrera attorney's fees in the amount of $4,500, with payments due directly to Herrera's attorney, Michael Carver.

Cantarella filed a chapter 7 bankruptcy case on November 28, 2012. He named both Herrera and her former attorney, Michael Carver, in his Schedule F as "charge account" creditors with "unknown" debt amounts. Cantarella did not list Herrera in his Schedule E.

-3-

On February 20, 2013, Herrera, appearing pro se, filed an adversary complaint against Cantarella seeking to except $11,800 from Cantarella's discharge under § 523(a)(15). She failed to include any allegations for an exception to the discharge of certain debts under § 523(a)(5). She attached to her adversary complaint a copy of a letter signed by Cantarella and dated January 27, 2012, wherein Cantarella agreed to pay Herrera, within one year, the following court ordered sanctions and uncovered medical costs:

1. Sanctions of 07/28/08 $4,000.00 minus $300.00 ..... $4,930.00
2. Discovery Sanctions of 03/26/10 $700.00 minus $150.00.. $   631.00
3. Remaining child birth costs of 10/18/07 ........... $   940.59
4. Uninsured medical cost ........................... $1,000.00
5. Attorney Sanctions of 07/23/10 minus 1,200.00...... $3,300.00
6. I agree to handle the current dental cost.......... $   400.00
7. I agree to pay your time for looking for a door.... $   400.00

Cantarella indicates in his letter that the above amounts total $11,800, but they add to only $11,601.59. Neither party raised any issue on appeal about any discrepancy in the amount. The bankruptcy court used the aggregate amount of $11,800 for its calculations. We deem the parties to have waived any issue concerning any discrepancy in the amount.

On November 19, 2013, Cantarella moved to dismiss Herrera's complaint for failure to state a claim under § 523(a)(15), arguing that "the sanctions in question have absolutely nothing to do with 'Child Support[,]' 'Domestic Support[,]' 'Alimony' or maintenance of 'Child Support' or 'Attorney Fees'." Herrera opposed the motion to dismiss, contending that: Cantarella had failed to cite

-4-

the correct Code provision; and she had established a claim under § 523(a)(15). The bankruptcy court orally denied Cantarella's motion to dismiss at a hearing held on December 17, 2013, but no tentative ruling or order followed the oral ruling. The court set a trial for May 28, 2014. Cantarella generally denied all allegations in his answer.

Prior to trial, attorney Karen Geiss appeared on behalf of Herrera. Herrera filed a Declaration on April 28, 2014; Cantarella filed a Responsive Declaration on May 5, 2014. Neither party filed a pretrial order or pretrial memoranda.

Herrera's Declaration, Dkt. no. 18, provides, in part:

>    10.    That on July 28, 2008 a court order was filed in the family case ordering Defendant/Petitioner to pay sanctions to Plaintiff/Respondent the sum if [sic] $4,000.00 payable at the rate of $100.00 per month commencing August 15, 2008. The court advised that if the Defendant/Petitioner misses two payments, the entire balance becomes due together with interest at the legal rate of 10% per annum. As of January 27, 2010, Defendant/Petitioner only paid $300.00 of these court ordered sanctions with a balance due in the amount of $3,700.00 plus interest. **A certified copy of the order will be presented as Exhibit 3**.
>
>    11.    That on October 1, 2008 a Stipulation for Judgment was filed in the family case ordering as follows:
>
>        a.    Defendant/Petitioner shall pay to Plaintiff/Respondent court order medical reimbursements as to one-half of uninsured prenatal and post natal expenses Plaintiff/Respondent paid in the total amount of two times $2,480.78. $2,480.78 is the amount Defendant/Petitioner is to pay Plaintiff/Petitioner forthwith, payable $100.00 per month commencing November 1, 2007. As of January 27, 2012, Defendant/Respondent only paid $1503.19 of the child birth costs with a balance due of $940.59 plus interest.
>
>        b.    The Plaintiff/Respondent and

-5-

Defendant/Petitioner shall each pay one-half of costs/fees of the Special Master totaling $5000.00. Plaintiff/Respondent paid her share of $2,500.00 however she has no direct knowledge whether or not Respondent/Petitioner submitted his share.

**A certified copy of the Stipulation for Judgment will be presented as Exhibit 4**.

12. That on December 28, 2009, a Minute Order was filed in the family case ordering all uninsured medical expenses to be shared equally. As of January 27, 2012, Defendant/Petitioner owes $1,400.00 incurred prior to 01/27/2012, Defendant/Petitioner has paid $400.00 of these expenses leaving a balance in the amount of $1,000.00 reimbursedment [sic] for his share of out of pocket medical costs plus interest. **A certified copy of the Minute Order will be presented as Exhibit 5**.

13. That on March 26, 2010, a Minute Order was filed in the family case ordering Defendant/Petitioner to pay sanctions to Plaintiff/Respondent the sum if [sic] $700.00 payable at the rate of $70.00 per month commencing April 1, 2010. The court advised that if one payment is more than 10 days late, the entire amount shall become due and payable in full bearing a legal rate of interest from the date of the default. As of January 27, 2012, Defendant/Petitioner paid on $150.00 of the court ordered sanctions with a balance due of $631.00 plus interest. **A certified copy of the Minute Order will be presented as Exhibit 6**.

14. That on July 23, 2010, A Minute Order was filed in the family case ordering Defendant/Petitioner to pay to Plaintiff Respondent attorney fees in the amount of $4500.00 payable at the rate of $100.00 per month commencing August 1, 2010. Payments shall be made payable directly to Plaintiff/Respondent's attorney, Michael Carver. Defendant/Petitioner listed Michael Carver on his Schedule F as a charge account with an unknown amount. The amount due to attorney, Michael Carver, is unpaid and Carver is proceeding against Plaintiff/Respondent to collect the debt. Plaintiff/Respondent is awaiting the decision of the mediator as to her responsibility in this matter. As of January 27, 2012, Defendant/Petitioner paid only $1200.00 of the fees with a balance due in the amount of $3,300.00. plus interest. **A Certified copy of the Minute Order will be presented as Exhibit 7**.

15. That on January 27, 2012, Defendant/Petitioner signed a notarized statement of all

amounts owed to Plaintiff/Respondent indicating his agreement that all amounts would be submitted within one year. **A copy of the Notarized Statement will be presented as Exhibit 8.**

* * *

17. As of January 27, 2012, Defendant/Petitioner owed me $11,800.00 plus interest per his own notarized statement. Subsequent to signing the notarized statement, Defendant/Petitioner still owes $11,000.00 plus interest.

(Emphasis in original). The record establishes that Herrera never filed or offered any exhibits at trial.

The following is an excerpt from Cantarella's Responsive Declaration, Dkt. no. 19:

3. The plaintiff has been ordered by the court to pay the defendant child support and to date the plaintiff is delinquent with her child support obligation, in addition I have had to request from the presiding judge to file an OSC contempt to force the plaintiff to pay her child support obligation. A true and correct copy of the order from the presiding judgment granting the filing of the contempt will be presented as Exhibit C.

Although the Family Law Division's minute order from December 28, 2009, directed Herrera to pay monthly child support of $371 and, although Cantarella argues in his responsive declaration, as quoted above, that Herrera is delinquent with her child support obligation, Cantarella does not disclose any support to which he is or may be entitled on his schedule of personal property.

At the trial held May 28, 2014, the bankruptcy court indicated to the parties that it could take the matter under submission based upon the parties' declarations, to which no opposition occurred. The bankruptcy court also gave the parties the opportunity to make any additional arguments. Herrera's

-7-

counsel presented argument, clarifying that Cantarella owed nonsupport amounts to Herrera and that no marriage occurred between Herrera and Cantarella, so their relationship did not warrant a divorce. Hr'g Tr. (May 28, 2015) 3:12-16. Herrera's counsel referenced two cases, without citation, namely: Holiday v. Kline (In re Kline), 65 F.3d 749, 751-52 (8th Cir. 1995); and Williams v. Kemp (In re Kemp), 242 B.R. 178, 181-82 (8th Cir. BAP 1999), for the proposition that the nonspouse mother of debtor's child could recover birthing expenses, dental expense and attorney's fees as nondischargeable debts owing to the child. Herrera's counsel concluded by arguing that the benefit to Cantarella of discharging the debts did not outweigh the detrimental consequences such a discharge would have on Herrera.[4]

On June 6, 2014, the bankruptcy court entered a Statement of Decision After Trial ("Decision"), summarily concluding that all but $400 (the amount associated with looking for a door) of the $11,800 related to Cantarella's child and, thus, $11,400 should be excepted from Cantarella's discharge under § 523(a)(15). Cantarella filed his notice of appeal on June 19, 2014, and on July 1, 2014, the bankruptcy court entered a one page judgment after trial concluding "[t]he debt owed to Plaintiff in the amount of $11,400.00 is determined to be nondischargeable." Dkt. no. 31. The notice of appeal is timely.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334

---

[4] Congress deleted the balancing test imposed under § 523(a)(15) when it adopted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"), effective October 17, 2005.

and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Did the bankruptcy court err in determining the nondischargeability of the debts at issue under § 523(a)(15)?

## IV. STANDARD OF REVIEW

The standard of review for legal questions is de novo and clearly erroneous for factual questions. Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir.1998). Whether a debt is dischargeable is a mixed question of fact and law that is reviewed de novo. Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1262 n.20. A bankruptcy court abuses its discretion if it applied the wrong legal standard or misapplied the correct legal standard or its factual findings were illogical, implausible or without support in the record. Trafficschool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

Cantarella contends that nine issues exist on appeal, but virtually none has been properly briefed; he waived many issues prior to the appeal. Construing his pro se brief liberally as required, Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 698-99 (9th Cir. 1990), we conclude that the two primary issues

-9-

before us are: (1) whether the bankruptcy court erred in excepting $11,400 from Cantarella's discharge under § 523(a)(15); and (2) whether the bankruptcy court denied Cantarella due process when the bankruptcy court took the matter under submission. We will address the first issue, but given our disposition on the first issue, the second issue involving due process becomes moot as we are reversing the bankruptcy court' decision.[5]

The remainder of Cantarella's arguments on appeal all relate to his argument that the bankruptcy court erred in excepting $11,400 from Cantarella's discharge under § 523(a)(15). Cantarella questions whether the bankruptcy court had the authority to declare Herrera a spouse or former spouse. We can find nothing in the record to suggest that the bankruptcy court made such a finding; instead the bankruptcy court made a finding that all the stated debts "relate to [Cantrella's] child."

To give this issue context, a review of the statutory provisions involving domestic relations in bankruptcy is instructive.

Section 523(a)(5) excepts from discharge debts for a domestic support obligation. The term "domestic support obligation" is defined by section 101(14A) as:

---

[5] Even if we did consider the merits of Cantarella's second issue, he received due process. As correctly noted by Herrera, a reading of the transcript shows that the bankruptcy court gave both parties an opportunity to speak and to present and cross-examine witnesses. Cantarella declined to add to the record and failed to speak up or object to submission of the matter on the parties' declarations. Cantarella had an opportunity to present his case, which he did by declaration. "Due process only requires a meaningful hearing appropriate to the nature of the case." Jordan v. City of Lake Oswego, 734 F.2d 1374, 1376 (9th Cir. 1984), citing Bell v. Burson, 402 U.S. 535, 540 (1971).

-10-

a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is–

    (A) owed to or recoverable by–

        (i) **a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative**;

        . . . .

        (B) in the nature of alimony, maintenance, or support . . . of **such spouse, former spouse, or child of the debtor or such child's parent**, without regard to whether such debt is expressly so designated;

    (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–

        (i) a separation agreement, divorce decree, or property settlement agreement;

        (ii) an order of a court of record; or

        . . . .

(Emphasis added).

Section 523(a)(15) excepts from discharge debts owed

**to a spouse, former spouse, or child of the debtor** and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

(Emphasis added).

The identification of the payee in this appeal becomes critical, given the applicable statutory provisions. The individuals identified in § 523(a)(5) encompass a broader group than those identified in § 523(a)(15). In 2005, BAPCPA added "child's parent, legal guardian, or responsible relative" to the identified group in § 523(a)(5) and not to the identified group in

-11-

§ 523(a)(15), even though BAPCPA significantly broadened the scope of debts covered by § 523(a)(15).  Taylor v. Taylor (In re Taylor), 478 B.R. 419, 428 (10th Cir. BAP 2012); Bendetti v Gunness (In re Gunness), 505 B.R. 1, 5 (9th Cir. BAP 2014).

Second, the nature of the debt may be determinative. Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1141 (9th Cir. 1998)(court focused not on the status of the father as a spouse or former spouse of the mother, but rather, on whether the debt constituted a support obligation to the daughter, payable to the unwed mother and guardian ad litem).  A bankruptcy court must factually determine the nature of a debt as a matter of federal law and may consider how state law characterizes the debt.  Id. at 1140.

Cantarella also argues that the bankruptcy court improperly shifted the burden to him to prove either his inability to pay or the benefit to Cantarella of discharging the debt would outweigh any detriment to Herrera.  As discussed earlier, Herrera's counsel made that argument, but nothing in the record suggests that such argument factored into the bankruptcy court's decision and, in fact, that balancing test was deleted from the Bankruptcy Code in 2005.  Since neither §§ 523(a)(5) nor (a)(15) are listed in § 523(c)(1), the burden would normally fall on Cantarella to file a complaint for a determination as to whether any debts are not excepted from discharge under §§ 523(a)(5) and (a)(15).  However, in this instance, as Herrera initiated the nondischargeability complaint, the bankruptcy court placed the burden of proof on Herrera.  Hr'g Tr. at 1:20-23.

Herrera's and Cantarella's Declarations state how they each

-12-

owe one another debts based on the Family Law Action; they have provided Cantarella's letter specifying the debts he agreed to pay prior to bankruptcy. The bankruptcy court used the debts disclosed in Cantarella's letter and the Declarations to determine the nondischargeable debts and amounts. Based on such evidence, the bankruptcy court determined that the debts related "entirely" to the parties' minor child under § 523(a)(15), except for $400, without analyzing the payee, the nature of the debts or determining whether §§ 523(a)(5) or (a)(15) applies.

In applying § 523(a)(15), Herrera needed to establish three elements: (1) that the debt in question is owed to Cantarella's child;[6] (2) that the debt is not a support obligation within the meaning of § 523(a)(5); and (3) that the debt was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record.

Only the third element has been satisfied as the debts were incurred in connection with an order of a court of record. The first element was generally stated as debts related to the parties' child; however the Declarations only stated that debts existed between the parties and not for a child. The bankruptcy court did not analyze whether the stated debts constituted debts under §§ 523(a)(5) or (a)(15). Given the respective elements, the bankruptcy court needed to first determine if any of the debts

---

[6] In the parties stipulation for judgment they agreed that their Mexican wedding was invalid and null and void in California. They are not asserting that they were spouses or former spouses. See Cal. Fam. Code § 2212; Norris v. Norris, 324 F.2d 826, 829 (9th Cir. 1963).

-13-

constituted support debts under § 523(a)(5) and <u>Chang</u>. Do remaining child birth costs, uninsured medical costs and dental costs constitute support for the child? If so, how may they be excepted from discharge under §523(a)(15)? As to the sanction awards, how do these nonsupport debts satisfy the payee element of § 523(a)(15)? <u>See</u> <u>In re Gunness</u>, 505 B.R. at 7-8. Or do the sanction awards constitute support, but if they do, how do they satisfy the payee element of § 523(a)(5)?

This appeal is dissimilar from <u>In re Jodoin</u>, 209 B.R. 132, 137-38 (9th Cir. BAP 1997), where through arguments made and evidence admitted, the parties provided the bankruptcy court the opportunity to decide the § 523(a)(5) issues even though the plaintiff in that proceeding only alleged § 523(a)(15). Here, Herrera specifically stated during the hearing that the debts only involved nonsupport debts. Neither party implicitly accepted resolution of any issue other than one arising under § 523(a)(15).

We conclude the bankruptcy court applied the wrong legal standard or misapplied the correct legal standard and what findings the bankruptcy court did make are without support in the record; thus, the bankruptcy court abused its discretion.

## VI. CONCLUSION

For the reasons set forth above, we REVERSE the bankruptcy court's order and judgment.[7]

---

[7] As debts excepted under § 523(a)(5) and (a)(15) may be pursued post-discharge and case closure, Herrera may seek leave to amend her pleadings or initiate new litigation asserting appropriate allegations under the appropriate statute.

-14-